# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LITTLE LADY FOODS, INC., | )<br>) |
| Plaintiff, | )<br>) |
| | ) No. 10 C 8280 |
| v. | )<br>) The Honorable William J. Hibbler |
| HOUSTON CASUALTY COMPANY, | )<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Little Lady Foods brought this action against its insurer, Houston Casualty Company ("HC"), seeking a declaratory judgment that it is entitled to coverage under its policy with HC, and alleging breach of contract and breach of the implied covenant of good faith and fair dealing. The Court's jurisdiction is based on the diversity of the citizenship of the parties under 28 U.S.C. § 1332. The parties have filed cross-motions for summary judgment. Little Lady moves for summary judgment only on Count I of the complaint, which seeks declaratory judgment. HC moves for summary judgment on all three counts. For the following reasons, the Court DENIES Little Lady's motion and GRANTS HC's motion.

## I. Factual Background

The facts in this case are undisputed. In fact, the parties have stipulated to a joint statement of facts.

HC issued to Little Lady a Malicious Product Tampering/Accidental Product Contamination insurance policy for the November 15, 2009 to November 15, 2010 policy period. The applicable Scope of Coverage section of the policy provides that HC "agrees to indemnify [Little Lady] for LOSS resulting directly from an ACCIDENAL PRODUCT

1

CONTAMINATION first discovered by [Little Lady] during the Policy Period." The policy defines "loss" to include a number of things, including expenses related to "chemical analysis in order to ascertain whether [Little Lady's] PRODUCT(S) have been contaminated and/or to ascertain the potential effect of the ACCIDENTAL PRODUCT CONTAMINATION." The policy defines "accidental product contamination," in relevant part, as:

> any accidental or unintentional contamination, impairment or mislabeling (including mislabeling of instructions for use) during the manufacture, blending, mixing, compounding, packaging, labeling, preparation, production or processing…of [Little Lady's] PRODUCTS…provided always that the consumption or use of [Little Lady's] CONTAMINATED PRODUCT(S) has, within 120 days of such consumption or use, either resulted, or may likely result, in…physical symptoms of bodily injury, sickness or disease or death of any person(s)…

In early January 2010, Little Lady began producing one of its products, a burrito product for a convenience store, through a new process that left the burrito partially uncooked when it left Little Lady's plant. As a result, Little Lady was required under its Hazard Analysis and Critical Control Plan ("HACCP") as well as by the United States Department of Agriculture ("USDA") to perform laboratory tests on the burrito product and equipment for the presence of harmful bacteria prior to shipment.

The tests performed between January 6 and January 16, 2010 on the burrito product and equipment by Little Lady's independent testing laboratory, Don Levy Laboratories, indicated that six samples showed the presence of bacteria within the listeria genus. The listeria genus includes seven strains of bacteria, including *listeria innocua, listeria seeligeri, listeria welshimeri, listeria ivanovii, listeria grayi, listeria murrayi,* and *listeria monocytogenes* ("LM"). Of these seven strains, only LM, which causes listeriosis, is likely to cause physical symptoms of bodily injury, sickness, disease or death in humans. A test result indicating the presence of any

2

strain within the listeria genus indicates that LM could be present in the product and may provide other information concerning overall plant sanitation. As a result, Little Lady could not distribute the product until it confirmed that LM was not present.

The USDA has specified, by regulation, its presumption that LM is a safety hazard in all ready-to-eat foods and that companies such as Little Lady must effectively address this risk. Until January 16, 2010, Little Lady's HACCP required independent testing for bacteria from the listeria genus, which is an accepted industry practice. Accordingly, the tests performed on Little Lady's burrito product did not determine which strains of the listeria genus were present. Subsequent to January 16, 2010, in addition to the tests it performed for all bacteria in the listeria genus, if the product tested positive for such bacteria, Little Lady would undertake further tests to determine the presence of LM specifically.

When Little Lady learned of the presence of listeria genus bacteria in the burrito product samples, it notified the USDA and its customer and placed a hold on 57,374 cases of the product produced before that date. Such action was consistent with established industry practice as well as with USDA regulatory requirements. In addition, processors are required by USDA to develop, maintain and strictly comply with mandatory HACCPs. 9 C.F.R. § 417.2.

Little Lady notified HC of the test results indicating the presence of listeria and made a claim for coverage under the Accidental Product Contamination section of the policy. HC informed Little Lady that the product must test positive for LM specifically. Little Lady tested the product for LM, and the results were negative.

Because it was determined that LM was not present in any of the burrito product, the USDA released from hold the 57,374 cases of the product. Part of the product was sold on the secondary market for consumption by consumers and some was destroyed due to quality issues

from the handling and testing of the product. There have been no reports of any physical symptoms of bodily injury, sickness, disease or death of any person from the consumption of the burrito products at issue.

After receiving the results of the additional tests showing that LM was not present in any of the product, HC denied coverage under the Policy on the grounds that any loss was not the result of an "accidental product contamination," as those terms are defined in the policy. HC has not paid any amounts under the Policy to Little Lady in connection with this matter, including the costs of further testing of the burrito product.

**II. Standard of review**

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating there is no genuine issue of material fact, and judgment as a matter of law should be granted in their favor. *Id.* Once the moving party has met the initial burden, the non-moving party must offer more than a mere scintilla of evidence to survive summary judgment. *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005). The non-moving party must produce specific facts showing there is a genuine issue of material fact, and that the moving party is not entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Finally, all evidence and inferences must be viewed in the light most favorable to the non-moving party. *Id.* at 255.

Because the facts are undisputed in this case, and because both parties are movants, the Court need only determine whether each party has met their burden of demonstrating that judgment as a matter of law should be granted in their favor.

### III. Analysis

The crux of this case is the interpretation of the "accidental product contamination" definition in the policy. More specifically, the case turns on the reasonable interpretation of the phrase "may likely result" within that definition. The parties agree that Illinois law governs this dispute. Thus, the insurance policy is subject to the general rules governing the interpretation of other types of contracts. *Levy v. Minn. Life Ins. Co.*, 517 F.3d 519, 523 (7th Cir. 2008). In order to ascertain the parties' intent as to these phrases, the Court will construe the policy as a whole. *Id.* If the Court determines that the policy's language is unambiguous, it will give the words their plain, ordinary, and popular meaning. *Id.* "Words are ambiguous only if they are subject to more than one reasonable interpretation." *Id.* The Court will construe any ambiguous terms against HC because it drafted the policy. *Id.*; *see also Great W. Cas. Co. v. Mayorga*, 342 F.3d 816, 818 (7th Cir. 2003) ("insurance contracts are interpreted in doubtful cases in favor of the insured…because they are drafted by the insurers, because their typical wording even when clear to experts is often opaque to insureds…, and because insureds want insurance against the vagaries of interpretation").

The parties' positions are relatively simple and straightforward. HC argues that because none of Little Lady's products were ever actually contaminated with harmful bacteria, there was no "accidental product contamination." HC argues that Little Lady's temporary belief that harm might "likely result" from listeria bacteria that were present is irrelevant because the fact is that there never actually was any such danger. Little Lady argues that when it filed its claim, the

5

facts before it made it possible, if not probable, that harm would result from selling the product. Little Lady focuses on the fact that its own HACCP and the USDA required it to place a hold on the product when it tested positive for listeria generally, and that it had to bear significant costs as a result. The parties are unable to point to any case law interpreting a similar term in a policy of this sort.

The Court finds only HC's interpretation to be reasonable. The parties engage in a great deal of debate over whether the phrase "may likely result" means that harm to consumers must be "probable" or merely "possible." But that debate misses the point, because harm to consumers was neither probable nor possible in this situation. The parties agree that the product did not contain LM, the only harmful strain of the listeria genus. Little Lady's temporary belief that it might contain LM is therefore irrelevant. Little Lady is essentially asking the Court to re-write the policy to require a likelihood that a product is contaminated rather than a likelihood that the contaminant it does contain is dangerous.

When taken to its logical extreme, Little Lady's interpretation would allow the company to file a claim every time its products tested positive for bacteria of any kind. Without doing further testing to determine whether any of the bacteria were actually dangerous, Little Lady could claim that it was likely that the product would cause harm. This is especially so since Little Lady argues that "likely" means merely "possible." In fact, because the presence of some bacteria is so common, and because of the USDA's presumption that LM is a safety hazard in all ready-to-eat foods, one might argue under Little Lady's interpretation that the company operated in an almost constant state of "likely" contamination and that the policy provided coverage for virtually every cost associated with quality control. This is clearly an unreasonable

6

interpretation. The fact that Little Lady bore some costs as a result of its fear of contamination does not mean those costs are losses covered by the policy.

Neither is the Court persuaded by Little Lady's arguments that HC's interpretation conflicts with public policy. The fact that Little Lady's HACCP and the USDA required Little Lady to put its product on hold when it discovered bacteria from the listeria genus does not mean that HC's policy must provide coverage in order to comport with public policy. Little Lady's HACCP and the regulations of the USDA are presumably aimed not only at remedying contamination, but preventing it. HC's policy is meant to cover the costs of the former, not the latter. In fact, Little Lady states that the presence of listeria genus bacteria may provide information concerning overall plant sanitation. Thus, the company and the USDA may have an interest in using and analyzing that information regardless of whether the product actually contained a dangerous contaminant.

Little Lady claims that if the Court accepts HC's interpretation it will be "forced to choose between risking the public health and its reputation by selling a product that has been determined to contain listeria while gambling that LM is not present, or going without insurance coverage for the inevitable financial consequences of complying with its HACCP plan and putting a hold on the affected product." This is wrong for a number of reasons. Obviously, Little Lady has no such choice because it may not choose to risk the public health in this manner. It seems clear that would be a violation of its HACCP and USDA regulations. But Little Lady is not necessarily stuck with the second option either. First of all, the fact that HC's policy does not provide coverage to Little Lady for all of the inevitable financial consequences of complying with its HACCP plan does not mean that Little Lady must go without coverage. Perhaps Little Lady can find a policy that does provide such coverage. HC is not to blame if it cannot. Second,

good public policy does not necessarily entail providing insurance coverage for all situations. Finally, the fact that Little Lady promptly changed its protocol to include automatic LM testing whenever a product tested positive for listeria indicates that the company could have done that from the beginning. Little Lady does not argue otherwise. Once Little Lady employed such testing, and determined that the product did not contain LM, it was able to sell the product on the secondary market. Thus, many of the "inevitable financial consequences" of which it complains may have been avoided if it had tested for LM from the beginning.

Therefore, the Court denies Little Lady's motion for summary judgment on Count I and grants HC's motion as to that count. Because the policy did not provide coverage for this situation, HC did not breach the contract nor act in bad faith by failing to pay the claim. The Court therefore grants HC's motion on the remaining counts as well.

## CONCLUSION

For the above reasons, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's motion for summary judgment. The Court enters judgment in favor of Defendant and against Plaintiff.

IT IS SO ORDERED.

9/22/11
Dated

Hon. William J. Hibbler
United States District Court

8